**In re SUCESORES de ABARCA, INC., Debtor.**

**Tomas PADILLA, Trustee for Sucesores de Abarca, Inc., Plaintiff,**

**v.**

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO, Defendant and Third–Party Plaintiff,**

**v.**

**Benjamin ORTIZ, John F. Yoder, Lower Yoder and Inversions, Inc., Third–Party Defendants Cross–Plaintiffs.**

Civ. No. 85–0259(RLA).

United States District Court, D. Puerto Rico.

Oct. 21, 1987.

---

Rodríguez Ramón Peña & Cancio, Hato Rey, P.R., for plaintiff-appellee.

Roberto García Torres, San Juan, P.R., for defendant-appellant.

## OPINION AND ORDER

ACOSTA, District Judge.

The present case is before us on an appeal from the United States Bankruptcy Court's June 26, 1984 and September 10, 1984 judgments denying defendant-appellant's, Government Development Bank for Puerto Rico ("GDB"), motion for summary judgment; granting the complaint filed by plaintiff-appellee, Tomás Padilla as Trustee of debtor Sucesores de Abarca, Inc. ("Abarca"); and denying GDB's counterclaim. Jurisdiction is premised on 28 U.S.C. 1334(a) and Bankruptcy Rules 8001, 8002 and 8003.

The main issue is whether the Bankruptcy Court correctly held that under Puerto Rico law certain overhead traveling cranes located at Abarca's warehouse were *not* encumbered by a mortgage held by GDB on the warehouse property. The Bankruptcy Court based its conclusion, after much briefing, an evidentiary hearing and a visual inspection, on a finding that under Puerto Rico law the cranes were movables (akin to the common law concept of chattels) and that these were not so affixed to the land as to make them, as GDB would have it, part of the realty. Since they are not part of the realty, the Bankruptcy Court reasoned, then they cannot be part of the real property mortgage Abarca owes GDB.

After giving the disputed legal matters in this case a fresh evaluation and having reviewed the Bankruptcy Court's factual findings under the "clearly erroneous" standard, *See* 1 *Collier on Bankruptcy* 3–183 (1987); Bankruptcy Rule 8013; *Rubenstein v. Ball Bros. Inc.*, 749 F.2d 1277 (9th Cir.1984), we must agree with the Bankruptcy Court's finding and for the reasons below we affirm both of the Bankruptcy Court's judgments.

## BACKGROUND

Abarca's trustee, Tomás Padilla, initiated an adversary proceeding in the Bankruptcy Court seeking, *inter alia,* the return of two (2) cranes in possession of Abarca's real property mortgagee, GDB. GDB came to possess the cranes when it foreclosed on the mortgage. The two cranes, unlike several others that had previously been removed and publicly sold by Abarca, were still affixed to the land when GDB foreclosed and took possession of the warehouse.

GDB answered Abarca's complaint alleging that the cranes were covered by a clause in the mortgage note which extended the mortgage to include not only the real property on which Abarca's warehouses were located but also the "buildings, structures, betterments, fixtures /and/ appurtenances" attached to it. Based on this argument, GDB counterclaimed against Abarca for the other cranes that Abarca's trustee had removed and sold prior to foreclosure.

Abarca, in turn, admits to the clause but completely disagrees with GDB as to its scope. The clause, says Abarca, was not intended by the original contracting parties to extend to machinery, like the cranes, which are "easily removable without affecting the realty." This was the position adopted by the Bankruptcy Court which is now before us on appeal.

## ARGUMENTS

As noted above, the Bankruptcy Court agreed with Abarca's argument that the cranes are movables unencumbered by GDB's mortgage notes.

It concluded, after reviewing the relevant Civil Code commentaries, which it did not find helpful, that under Puerto Rico law the intention of the parties as well as the nondestructive removability of the equipment determined whether or not such equipment can be considered movable or chattel property as opposed to immovables or fixtures. The burden of proving these elements, the Court correctly noted, was on the secured creditor, GDB. *See generally José Romanguera e Hijos v. Court of Tax Appeals*, 61 D.P.R. 114 (1942). In fact, GDB does not dispute that it carries the burden of proof. *See* appellant's brief at 24. Yet GDB did not satisfy its burden. The main evidence it presented to prove intention was a letter written in 1980 by

Mr. González, the now deceased President of Abarca, stating that the cranes constituted "real property by destination." But the Bankruptcy Court correctly dismissed the letter as not evincing the intention of the parties *at the time* of the mortgage transaction but rather just representing an unfounded opinion by a nonwitness to the mortgage dealings, "expressed long after the annexation, long after the mortgages, and a few months before bankruptcy, (and after defendant's foreclosure)...." The controlling effect of a determination of intention at the time of the original transaction rather than afterwards is implicitly if not expressly conceded by GDB in the arguments made, and case law cited, in its brief. *See, e.g.,* appellant's brief, at 8.

The other element GDB failed to prove in order to overcome summary judgment[1] is that the cranes were permanently affixed to the land in such manner that they could not be removed without causing substantial damage to either the cranes or the land. *See* Roca Sastre IV *Derecho Hipotecario* 310 (1954). GDB argues that this is not an issue in the case at bar and consequently it should not have been addressed by the Bankruptcy Court. Rather, argues GDB, the issue is whether or not the cranes sold by Mr. Padilla were alienated from the Abarca property in contravention to the mortgage extension clause which includes all the "... fixtures /and/ appurtenances ..." on the Abarca land. GDB further argues that Article 111, 30 L.P.R.A. § 206, 207, now repealed but still the applicable law, of the Puerto Rico Mortgage Law of 1893 provides for the extension of realty mortgages, either expressly or impliedly, to movable objects on the realty used "for the service of some industry." Thus GDB feels that since the cranes were clearly used for the service of the warehouse industry located on the property subject to the mortgage that the same are automatically, and as a matter of law, part of the mortgaged realty. This is circular and unconvincing argument.

GDB's reading of Article 111 conveniently disregards the provision that the movable objects must be "permanently attached to a building...." In light of the *full* import of Article 111, GDB's syllogism that since the mortgage *clause* covered fixtures and appurtenances and since the mortgage *law* permits extension of mortgages to movable objects in the service of some industry that therefore anything used in the service of Abarca's industry is a fixture or appurtenance covered by the mortgage clause cannot withstand simple scrutiny. It begs the question: Were the movable objects, i.e., the cranes, *permanently attached* to the realty such that the full provisions of Article 111 can be applied? Despite GDB's protestations, the matter at hand cannot be decided by a simple and conclusory reading of the mortgage clause and the mortgage law. The reason being that the the case law regarding appurtenances and fixtures on the one hand, and the express language of the mortgage law on the other, both rely on the concept of permanency, i.e., are the movable objects inalienably affixed to the land? Permanency, in turn, depends on a case by case analysis of factual issues including the intention of the parties and whether or not the movable objects can be removed from the realty without substantial destruction to the latter. Not an easy task by any means but certainly a necessary one.

In sum, GDB has misconstrued the main issue. The question is not whether the law permits a realty mortgage extension clause to substitute for a chattel mortgage. It does. Rather, the issue is whether or not under the particular circumstances of the present case such a substitution was intended as to the cranes either expressly *or* by a reasonable inference from the permanence of the cranes vis-á-vis the realty.

■ The Bankruptcy Court emphasized that it was not convinced that the mortgage extension clause was intended as a substitute for a chattel mortgage even

---

**1.** *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

though it acknowledged the possibility. Presumably, the Bankruptcy Court concluded from the evidence that the cranes were never intended to be encumbered by any mortgage whatsoever. The record does not disprove this presumption. Nor is the Bankruptcy Court's finding clearly erroneous. Therefore, we accept it.

Again, contrary to GDB's claims of error, the Bankruptcy Court was correct to focus the issue on the intent of the parties and the permanency of the cranes as well as to exact from GDB a clear showing of these elements. The Supreme Court of Puerto Rico has established that " 'intention to make a chattel a permanent accession to the realty must affirmatively and plainly appear.' " *José Romaguera e Hijos v. Court of Tax Appeals, supra* at 119 (quoting 22 *Am. Jur.* 718). In the case at bar no such clear intention was ever expressed at the time the mortgage was perfected. Whatever intention can be gleaned from the mortgage clause or the record, including the aformentioned letter by Mr. González, is dubious at best. Where "the matter is left in doubt and uncertainty, the legal qualities of the article are not changed and it must be deemed a chattel." *Id.*

GDB's failure to present sufficient evidence, particularly regarding the issue of intention, prompted the Bankruptcy Court to hold both an evidentiary hearing and a visual inspection of Abarca's former premises primarily to explore the "permanency" angle. *See Order Denying Motion for Summary Judgment,* Adversary No. 81–0056, United States Bankruptcy Court for the District of Puerto Rico, March 11, 1983.

At the evidentiary hearing GDB simply relied on the mortgage extension clause and on Mr. González's letter. Indeed, there was conflicting testimony as to what understanding regarding ownership of the cranes and the scope of the mortgage clause the parties had achieved even after the foreclosure. *See, e.g.,* Transcript pp. 24, 26, 41, 46, and 64.

■ At this point, the Bankruptcy Court, faced with a dearth of relevant case law

and commentaries and given the scant evidence presented by GDB, took the common sense approach of inspecting the premises. We understand the inspection to have been intended to supplement the Bankruptcy Court's interpretation of the evidence and not as the sole and independent basis for its conclusion. As such, it was entirely within the Bankruptcy Court's prerogatives concerning factual determinations.

■ The inspection and other evidence in the record revealed that the cranes are removable and that "[t]heir removal will not cause the collapse or destruction of the buildings." Nor would, the Court added, the holes left in the concrete walls or floors be any worse than those created by the removal of other machinery. This finding is not clearly erroneous. In rough analogy, it stands to reason that since there were originally ten (10) similar if not identical cranes and eight were removed without any substantial damage or at least none that was visible, and, more importantly, none that was alleged by GDB at any time; then the cranes cannot, under Puerto Rico law, be considered permanently attached to the realty. Consequently, the cranes, both those sold and the two in possession of GDB, must be considered movables not encumbered by the mortgage note held by GDB.

GDB's other claims of error on the part of the Bankruptcy Court, particularly regarding the dismissal of its counterclaim and the lack of notice of the sale of the other cranes, do not merit any independent discussion given the arguments presented above. Suffice it to say that since the cranes were movable objects unencumbered by any mortgage, Abarca was free to sell them by way of its trustee in bankruptcy and GDB has no secured interest either in the proceeds of that sale nor in the two cranes it now possesses and must return.

## CONCLUSION

In accordance with the above, the judgments of the Bankruptcy Court dated June 26, 1984 and September 10, 1984 denying GDB's motion for summary judgment,

**644**

granting Abarca's complaint, and denying GDB's counterclaim are hereby AFFIRMED.

Judgment to be entered accordingly.

IT IS SO ORDERED.