### In re PORTO RICO IRON WORKS, INC., Debtor.

### The CHASE MANHATTAN BANK, N.A., et al., Plaintiffs, Appellees,

v.

### UNITED STATES of America, Defendant, Appellant.

### No. 87–1325.

United States Court of Appeals, First Circuit.

Heard Sept. 18, 1987.

Decided Dec. 16, 1987.

Michael Kimmel, Appellate Staff, Civ. Div., Dept. of Justice, with whom William Kanter, Appellate Staff, Civ. Div., Dept. of Justice, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R. and Douglas A. Riggs, Gen. Counsel, Dept. of Commerce, Washington, D.C., were on brief, for defendant, appellant.

Jay A. Garcia–Gregory with whom Leopoldo J. Cabassa Sauri, Milton L. Cruz and Fiddler, Gonzalez & Rodriguez, San Juan, P.R., were on brief, for plaintiffs, appellees.

Before BOWNES and BREYER, Circuit Judges, and LAGUEUX,[*] District Judge.

LAGUEUX, District Judge.

The issue in this case is whether the District Court erred in holding that a real nation.

[*] Of the District of Rhode Island, sitting by desig-

estate mortgage held by Chase Manhattan Bank, *et al.*, (hereinafter "Banks") extended automatically under Article 111 of the Puerto Rico Mortgage law of 1893, 30 L.P. R.A. § 207 (repealed 1979), to machinery and equipment described in a subsequent chattel mortgage held by the United States Economic Development Administration (hereinafter "EDA"). Because we hold that the Banks' mortgage expressly extended to the items in question, we affirm the ruling of the District Court.

In July 1977, the debtor, Porto Rico Iron Works, executed a real estate mortgage in favor of the Banks to secure promissory notes totalling $1,250,000. The mortgage expressly covered debtor's land and real estate in Ponce, Puerto Rico as well as "all other property, real, personal, or mixed now or hereafter acquired by Mortgagor— and enjoyed common with or in anywise appertaining to such property as well as all lands which may be consolidated or grouped with the Mortgaged Property." (Clause (d) in paragraph THIRD—App. 3).

In February 1978, debtor executed two mortgages in favor of the EDA to secure a $2,000,000 loan made by that agency: a real estate mortgage and a chattel mortgage. The real estate mortgage covered debtor's land and buildings in Ponce, Puerto Rico—the same real estate previously mortgaged to the Banks. The chattel mortgage covered and specifically described 190 items of machinery and equipment on the mortgaged real estate, including molding machines, lathes, drills, air compressors, welding machines and mobile cranes. The equipment and machinery items were valued in total at 2,000,000 dollars. (App. 30).

In a February 1, 1978 "Affidavit as to Adverse Change," debtor expressly warranted that there were no liens on the real and personal property *except* for the Banks' mortgage of July 1977:

4. All real and personal property, including buildings, improvements, ap-purtenances and rights in connection herewith, being offered as security, and owned absolutely by Borrower, and are free and clear of all liens, incumbrances or mortgages, conditional bills of sale, and are free from the right of claim of any other persons or firm, except:

a) Mortgage on the amount of $1,250,-000.00 in guarantee of a mortgage note on the same amount constituted according to deed of mortgage number Seven (7), dated July 19, 1977 before Notary Public Richard J. Gonzalez, pending to be recorded at the Registry of Property, Ponce Section.

(App. 26).

On February 3, 1978 debtor's counsel Miguel Pascual Esteban furnished an opinion letter to EDA expressly notifying the agency of the existence and priority of the Banks' mortgage. The letter stated:

4. That the mortgage on its real estate and the security interest on its personal property, both given as security to the Economic Development Administration for said loan, will be subordinate only to the first mortgage on its real estate constituted according to Deed of Mortgage Number Seven, dated on July 19, 1977 before Notary Public Richard J. Gonzalez, in the amount of $1,250,000.00 and the security interest on its inventories, and accounts receivables, property will be subordinate only to the Factor Lien's Agreement in favor of Citibank N.A., dated November 7, 1977 in the amount of $1,800,000.00

(App. 28–29).

However, in the affidavit accompanying the February 3, 1978 chattel mortgage, Hans Lopez Stubbe, President of Porto Rico Iron Works, stated that the "property is free of liens and encumbrances." (App. 33).

Debtor filed for bankruptcy in 1979. In April 1983, the Bankruptcy Court approved

the trustee's application to sell the debtor's machinery and equipment for $500,000. Following the sale, the Banks claimed that they were entitled to the sale proceeds. The EDA opposed this claim, arguing that the Banks' real estate mortgage did not cover the machinery and equipment in issue but that the EDA's chattel mortgage did. The parties stipulated that debtor owed EDA over $500,000. (App. 114).

The Bankruptcy Court held an evidentiary hearing in September 1983. At the hearing Mr. Lopez Stubbe testified that the equipment and machinery except welders, were bolted or attached to the real estate and served as an integral part of the industrial operation on the real estate. (App. 106–112) At the hearing, the Banks argued that they were entitled to the proceeds through clause (d) of paragraph THIRD in Deed Number 7. App. 85–86). In the alternative, the Banks argued that under Article 111 of the Mortgage Law of 1893, the real estate mortgage covered the machinery and equipment at issue anyway.

By an order dated December 2, 1983, the Bankruptcy Court denied the Banks' motion for application of the sale proceeds to them. Citing *Perez v. Matos*, 48 P.R.R. 582 (1935), the Bankruptcy Court concluded that the machinery and equipment were not "permanently attached" to the debtor's buildings and therefore the Banks' realty mortgage did not extend to them under Article 111 of the Puerto Rico Mortgage Law of 1893. (App. 131–133). The Bankruptcy Judge did not expressly address whether the Banks were entitled to the proceeds of sale under clause (d) of paragraph THIRD of the real estate mortgage, but by implication, he rejected the Banks' argument.

The Banks appealed to the District Court. The District Judge in a February 24, 1987 opinion, 71 B.R. 90, considered that "[t]he narrow issue presented for review is whether [under the Mortgage Law of 1893] an earlier mortgage over real property destined and used for industrial purposes encumbers all the movable property there located." (App. 134). The Court answered this question in the affirmative.

It held that under Article 111 of the Mortgage Law of 1893 a mortgage covering real estate dedicated to an industrial operation "will also constitute a lien over the chattels there located." (App. 137). The District Court observed that there would be a different result under Article 162 of the Mortgage Law of 1979, 30 L.P.R.A. § 2558 (Supp.1986) (superceding the Mortgage Law of 1893), but that the 1979 law was inapplicable to the Banks' 1977 mortgage.

On appeal EDA claims that the District Court erred by ruling that, under the Mortgage Law of 1893, the Banks' mortgage automatically extended to debtor's equipment and machinery. The EDA claims that the District Court's interpretation of the statute ignores the requirement that the "movable objects" be "permanently attached" to the debtor's realty. Because, as discussed below, we hold that the machinery in question was expressly made part of the real estate by the Banks' real estate mortgage, we do not address the scope of Article 111 of the 1893 Mortgage Law. We do note, however, that the District Court's ruling is consistent with *Banco Territorial y Agricola v. Graham*, No. 138 S.Ct. P.R. (Aug. 1, 1901) (English translation certified Aug. 24, 1987). In that case the Supreme Court of Puerto Rico applied the Mortgage Law of 1893 to similar facts just a few years after the statute was enacted.

In *Graham*, the debtor, Jose Ricardo Carazo Carreras, mortgaged to a bank his sugarcane hacienda "with all its belongings plus any others incorporated thereafter" in return for a $16,000 loan. When the debtor defaulted, the bank foreclosed on the mortgage and attached the farm and the machinery installed upon it. The attached machinery included "a 16.5′ diameter vacuum vat with a capacity for four tons of sugar, furnished with five copper coils, raps, manometers columns, platforms, ladders, and other accessories," a molasses pump, and "two centrifugal machines with their blender, transmissions, motors, and accessories." After a judicial sale was ordered, Roberto Graham filed a third-party complaint seeking a declaration that he was the owner of the machinery. Graham claimed that Carazo had bought the ma-

chines from him and then had assigned his ownership rights to Graham in return for an extension of time for paying the balance owed.

The San Juan District Court by judgment dated January 3, 1901 concluded that Graham was the owner of the machinery and ordered that the attachment be lifted and the machines be turned over to him. The Supreme Court of Puerto Rico applying sections 110 and 111 of the Mortgage Law of 1893 vacated the judgment:

> Considering: That pursuant to arts. 110 and 111(1) of the Mortgage Law, the mortgage covers the improvements which should be considered mortgaged together with the farm even if they are not mentioned in the mortgage contract, provided they correspond to the owner, the movables permanently placed in a building for ornament or comfort, or for the service of an industry, even if placed after the mortgage has been constituted; reason why, Carazo having bought from Graham the sugar-processing machines and installed them in his farm already mortgaged to the Bank, it is clear that, from that moment, they were affected by the mortgage that its owner, Carazo, had already constituted over said farm in favor of the Bank, regardless of the property rights Graham could have acquired over them, which rights could not release the machines from the encumbrance in favor of the Bank, from the moment they were installed in the farm by its owner, because the mortgage directly and indirectly affects the property over which it is imposed, regardless of the owner, on the compliance of the secured obligation; and, when failing to find it so, the trial court committed several errors of law listed in the second and third motives of the first ground of the appeal, and violated the cited legal provisions.

*Graham* did not turn on whether the machinery and equipment were "permanently attached" to the real estate. Indeed, it is clear that the machinery was not "permanently attached" because Graham had filed suit to have them removed and turned over to him.

The EDA attempts to distinguish *Graham* by claiming that the judgment "recited that it [had] been proved that [the] owner of [the realty] mortgaged in favor of the Bank, and also owner of the machines ... placed them permanently in the building of said farm for the service of the sugar industry." Appellant's Reply Brief at 10 (quoting *Graham* at 8). In the present case, the EDA argues, "the district court construed Article 111 as if there were no requirement of permanency." *Id.* at 10–11 fn. 15).

It is not clear whether the Supreme Court in *Graham* specifically noted that the objects had been permanently placed on the real estate or whether the court merely noted that this was the bank's claim. As the EDA stated, the "judgment does not expound on the meaning of permanent placement, or on particular elements of proof necessary to establish permanent placement." *Id.* at 10 (fn. omitted). We need not address this issue, however, because as the Banks had argued to the Bankruptcy Court, the disposition of the proceeds is properly resolved on the basis of the express terms of the Banks' mortgage alone.

Clause (d) of paragraph THIRD expressly stated that the mortgage extended to debtor's real estate in Ponce, Puerto Rico as well as "all other property real, personal, or mixed now owned or hereafter acquired by Mortgagor and enjoyed common with or in any wise appertaining to such property." (App. 3). The clause clearly encompasses debtor's machinery and equipment placed on the mortgaged real estate and necessary for the industrial operations conducted there.

The record indicates that the EDA was on notice that the Banks' mortgage extended to the machinery and equipment at issue here. The opinion letter by debtor's counsel notified the EDA that its real estate mortgage and security interest in personal property would be subject to the Banks' real estate mortgage. Moreover, the February 1, 1978 "Affidavit as to Adverse Change" notified the EDA that "All real

and personal property ... offered as security" was subject to the Banks' mortgage.

Once on notice, the EDA should have recognized that a problem existed if it wanted a first lien on the machinery and equipment. It could have solved the problem by seeking a release from the Banks of their interest in those items before making the loan. The EDA failed to seek or obtain such a release. The EDA did receive an affidavit from debtor's president stating that the equipment specified in the chattel mortgage was "free of liens." (App. 33). Debtor, however, having mortgaged its interest to the Banks, could not release the Banks' interest—only the Banks could do that. The record clearly indicates that the Banks did not.

In summary, we hold that the Banks are entitled to the proceeds from the sale of machinery and equipment at issue here because the Banks' mortgage expressly extended to these items of personal property used on the premises for industrial purposes. Because we base our decision on the terms of the mortgage itself, it is unnecessary to further discuss the scope of the Mortgage Law of 1893.

The judgment of the District Court is *Affirmed.*