COFFIN, Circuit Judge.
 

 This case concerns the application of Puerto Rican mortgage law to industrial equipment. The issue is whether, by terms of the mortgage law or the mortgage deed at issue, certain overhead cranes located at a warehouse were permanently annexed to the property so as to be covered by the mortgage deed securing a commercial loan extended by appellant. We hold, contrary to the decisions below, that by operation of both covenant and statute, the cranes are subject to the mortgage.
 

 I. FACTS
 

 Sucesores de Abarca, Inc. (Abarca) operated an industrial plant and warehouse in Puerto Rico. On April 1, 1974, together with its wholly owned subsidiary Abarca Warehouse, Abarca executed a mortgage covering eight adjoining parcels of real estate owned by these two entities. The purpose of the mortgage was to secure repayment of two commercial loans made by appellant Government Development Bank for Puerto Rico (GDB). In 1978 Abarca defaulted on the loans, leading to GDB’s foreclosure and eventual purchase of the mortgaged property, jointly with another creditor not a party to these proceedings, at a public sale in February 1979.
 

 Abarca filed a petition of bankruptcy on June 1, 1980. Appellee Thomás H. Padilla was appointed trustee and charged with liquidation of the debtor’s estate. As part of the liquidation, the trustee sold various pieces of equipment and machinery, including eight of ten traveling cranes located on the premises now owned by GDB and another creditor. Aware of doubts about the ownership of the remaining two cranes, the trustee declined to offer them at public sale, but instead brought this suit seeking their release from the custody of GDB. The proceeds from the sale of the other cranes were held in a separate bank account pending resolution of this case.
 

 GDB asserted its ownership of the two remaining cranes by operation of the foreclosure and purchase of the mortgaged assets at the February 1979 public sale. It further counterclaimed for the proceeds of the eight cranes sold by the trustee. GDB moved for summary judgment on the basis of its mortgage deed and provisions of the Mortgage Law of Puerto Rico. The bankruptcy judge denied the motion as premature and instead visited the warehouse personally and subsequently held an evidentia-ry hearing. The bankruptcy court then ruled that the cranes were not covered by the mortgage, which decision was affirmed by the district court. 78 B.R. 640.
 

 II. APPLICABLE LAW
 

 There are three sources of law to apply to the issue at hand. First, the Deed of Mortgage that forms the basis for appellant’s claim provides:
 

 The Mortgagor hereby constitutes and creates a voluntary mortgage over the property described above with buildings, structures, betterments, fixtures, appurtenances, presently installed or to be installed in the future, or used by the Mortgagor in connection with the business or enterprise operated by the Mortgagor in the property.
 

 Second, the Mortgage Law of 1893 provides:
 

 In accordance with the provisions of the preceding section [Extent of Mortgage], the following shall be considered to have been mortgaged jointly with the estate, even though not mentioned in the contract, provided they belong to the owner thereof:
 

 (1) Movable objects permanently attached to a building ... for the service of some industry.
 

 Article 111, Mortgage Law of 1893, L.P. R.A. tit. 30, § 207 (1966) (repealed 1979).
 

 In sum, under the deed the overhead traveling cranes are covered irrespective of
 
 *396
 
 Article 111 if they are “fixtures”; under Article 111 they are covered irrespective of the language of the mortgage deed if they are “permanently attached.” The third source of law, the case law of Puerto Rico, is applicable in revealing the meaning of these terms.
 

 We begin our analysis by recognizing our usual practice of deferring to the interpretation of Puerto Rican law given by federal judges who preside in that district.
 
 See, e.g., Rodriguez v. Escambron Dev. Corp.,
 
 740 F.2d 92, 96 (1st Cir.1984). Two considerations temper such deference in this case. First, the principal Puerto Rico case cited discussing the definition of fixtures expressly refers to the majority common law rule among the states.
 
 See José Romaguera e Hijos v. Court of Tax Appeals,
 
 61 P.R.R. 110 (1942). We need not be so circumspect about interpreting Puer-to Rican law when the path of analysis leads to familiar ground.
 
 See Ramirez de Arellano v. Alvarez de Choudens,
 
 575 F.2d 315, 319 (1st Cir.1978). Second, where there is disagreement among judges in the district as to the proper interpretation of Puerto Rico law, less deference is indicated.
 
 Id.
 
 As will be further developed, a comparison of the bankruptcy and district courts’ interpretation of Article 111 with the treatment of that statute in
 
 In re Porto Rico Iron Works, Inc.,
 
 71 B.R. 90 (D.P.R. 1987) (Fuste, J.), decided ten months prior to the district court’s affirmance, reveals such a conflict.
 

 Whether the cranes are fixtures under the mortgage deed or permanently attached within the meaning of Article 111 are properly considered mixed questions of law and fact.
 
 Bay State York Co. v. Mar-vix, Inc.,
 
 331 Mass. 407, 119 N.E.2d 727 (1954). This court will affirm the findings below on mixed questions under the clearly erroneous standard unless we believe the courts applied the wrong legal standard, in which case we will reverse for a significant error of law.
 
 Sweeney v. Board of Trustees,
 
 604 F.2d 106, 109 n. 2 (1st Cir.1979). We find such an error in this case.
 

 III. THE MORTGAGE DEED
 

 The Puerto Rico Supreme Court has indicated that, consistent with the majority rule among the states, whether an item of personal property is a fixture is primarily a question of intent. Romaguera,
 
 [1]
 
 Contrary to suggestions by the bankruptcy and district courts, however, the intent inquiry generally focuses less on the subjective intent of the parties to the mortgage deed than on the “intent” manifested by all of the circumstances surrounding the item’s attachment to the realty.
 

 The objective, apparent, or legal intention of the parties is the character of intention considered in determining whether an object has become a fixture, and their actual state of mind is a matter of little consequence_ [Sjuch intention need not be expressed in words, but may be inferred from all the facts and circumstances surrounding the introduction of the object onto the realty, including the relationship of the parties, the nature of the article, the mode of attachment, and such combinations of these and other factors which externally evidence the will of the parties....
 

 35 Am.Jur.2d
 
 Fixtures
 
 § 15 (1967) (citations omitted).
 
 [2]
 
 To the same effect is a case relied upon by appellee:
 

 
 *397
 
 “While of course it is true that the intent of the parties is controlling in construing the language of a contract or deed, this canon is often misleadingly used. The private intents of the parties, even though they may be shown to be identical, are not the measure of their rights or duties; [the measure is] rather that meaning which the law will impute to the words they have used, which is generally speaking, that which a reasonable person would suppose them to carry.”
 

 White v. Murtha,
 
 343 F.2d 831, 826 (5th Cir.1965) (quoting
 
 Howe & Rogers Co. v. Lynn,
 
 71 F.2d 283 (2d Cir.1934)). Explicit evidence of the annexor’s subjective intent is not required.
 
 See, e.g., Bastas v. McCurdy,
 
 266 S.W.2d 49, 51-52 (Mo.App. 1954).
 

 Thus, the crucial determination is whether the circumstances of this case, including the nature of the business (warehousing), the nature of the disputed items (traveling cranes used to lift and move goods through the warehouse), and the nature of their attachment to the realty (mounted on traversing rails bolted to H-columns embedded in the concrete floor and infrastructure) reveal that the cranes were intended as transitory or temporary implements or rather to remain in place indefinitely.
 
 See San Diego Trust & Sav. Bank v. San Diego County,
 
 16 Cal.2d 142, 150-52, 105 P.2d 94 (1940) (“In order to make an article a permanent accession to the land its annexation need not be perpetual. It is sufficient if the article shall appear to be intended to remain where fastened until worn out, until the purpose to which the realty is devoted has been accomplished or until the article is superseded by another article more suitable for the purpose.”) (citing 26 C.J. 657, § 6).
 

 While a determination of whether an item is a fixture is normally left to the trier of fact, the record is sufficient in this case to demonstrate the objective permanence of the cranes in question. The cranes were integral to the operation of the warehouse facility both at the time they were installed and the time the mortgage was executed. They were mounted on I-beam runways eight inches wide by 350 feet long, and supported on eight-inch H-columns embedded in the concrete floor. Their removal had caused and would cause holes in the concrete walls and floors of the buildings. The cranes were not freestanding or stand alone, self-contained machines like those many courts have found not to be fixtures, but were instead affixed to the infrastructure of the warehouse to facilitate its use as such.
 

 We note that our view that these cranes are properly considered fixtures covered by the mortgage deed is consistent with the predominant common law rule for industrial equipment, the “integrated plant doctrine”:
 

 [T]he position that any and all machinery essential to the proper functioning of a plant ... is a fixture, or is at least so presumed to be, irrespective of the manner in which it is annexed to the realty ... is held in some cases to be the controlling test and apparently represents the modern trend of the decisions.
 

 35 Am.Jur.2d
 
 Fixtures
 
 § 102.
 
 See also McCalla v. Harnischfeger Corp.,
 
 215 N.J. Super. 160, 521 A.2d 851 (1987) (in a personal injury action, overhead traveling cranes installed at foundry deemed not fixtures
 
 because
 
 New Jersey had abolished the integrated plant doctrine, and statute limited definition of fixtures to items which, if removed, would “do irreparable or serious physical injury or damage to the freehold”).
 
 [3]
 

 
 *398
 
 Further, both the bankruptcy and district courts ignored abundant case law indicating that determinations of whether a chattel has become a fixture depend in part on the relationship of the parties. Courts have frequently viewed the relationship of mortgagor and mortgagee as supporting a finding of fixture:
 

 As between the mortgagor and mortgagee of the realty, a liberal rule in favor of the mortgagee is applied and it is generally held that objects which are attached to the realty at the time the mortgage is granted and which are, from all outward manifestations, intended for permanent use and enjoyment in connection therewith are a part of the realty and are covered by the mortgage.... The lien of the mortgage is not generally affected by the fact that the fixture may be removed without injury to itself or to the freehold.
 

 85 Am.Jur.2d
 
 Fixtures
 
 § 50 (1967).
 

 The principal case relied on by both the bankruptcy and district courts,
 
 José Romaguera e Hijos v. Court of Tax Appeals,
 
 61 P.R.R. 110, is not to the contrary. That case did not involve a mortgage, but rather the tax status of storage tanks. More importantly, the court based its determination primarily on objective factors:
 

 Taking into consideration that the tanks in question are not permanently attached to the soil, but merely resting thereon; that said tanks belong to the lessee and not to the lessor ...; that the contracting parties stipulated that, upon termination of the lease, the lessee would be able to and should take away the tanks, leaving the land as it had found it; and that said tanks may be taken apart and removed from the lot without causing any harm to the real property or to the tanks themselves, we hold that the tanks in question are and should be considered personal property and should be appraised as such.
 

 Romaguera
 
 at 115-16. Similar manifestations of the temporary nature of the crane’s installation are absent in the present case.
 

 IV. ARTICLE 111 OF THE MORTGAGE LAW OF 1893
 

 Article 111 presents an issue similar to that concerning the definition of fixture. Indeed, in the district court’s view the two issues were the same: Since GDB failed to establish that the cranes were intended to be permanently installed as fixtures, the cranes therefore were not “permanently attached” under Article 111. But the terms of the statute demonstrate, even more clearly than the weight of common law decisions defining fixtures, the objective nature of the inquiry. Article 111 nowhere indicates that intent is an element in determining whether an object is permanently attached.
 

 Appellee points to the writings of Spanish Commentator Roca Sastre for support of his view that Article 111 incorporates the same subjective intent inquiry as fixture law. This reference is curious for several reasons. In discussing property which is automatically included in a real mortgage, Roca Sastre recognizes that additional items may be included by express agreement. IV Roca Sastre,
 
 Derecho Hipotecario
 
 482 (1968). Appellee argues that the cranes fall into a category which Roca Sastre calls “accessorial elements” or “appurtenances.”
 
 Id.
 
 at 485. Yet appurtenances were expressly included in the mortgage covenant. Further, in appellee’s paraphrase of Roca Sastre he all but concedes that the cranes were permanently installed:
 

 [Appurtenances] refers to those objects which, without being considered integral elements of the principal thing (the realty), have been placed permanently in it, being destined to its economic service. These objects include movable objects permanently placed in the mortgaged property for its adornment, comfort, exploitation or industrial service, and that can be separated without the breakage or deterioration of the object.... The traveling cranes placed by debtor on the realty fall within [this category].
 

 Appellee’s Brief at 11. If indeed the cranes are appurtenances, they are covered by the mortgage deed. Alternatively, if they are permanently placed, then they ap
 
 *399
 
 pear covered under the old Article 111 (but not the new statute).
 

 The bankruptcy and district courts concluded that the cranes at issue were neither permanently attached nor fixtures because the machinery was removable without destroying either the cranes or the warehouse. While we have no occasion to upset the factual finding regarding damage to the building, it does not resolve the Article 111 question.
 
 [4]
 
 Those sections of the 1979 Mortgage Law that replace Article 111 reverse the presumption that trade fixtures are covered by a real mortgage:
 

 Unless there is a specific agreement or legal provision to the contrary, a mortgage, whatever the nature and form of the obligation that it secures, shall not include: (1) Movable objects that are permanently placed on the mortgaged property, either for its decoration, comfort or development, or for industrial use, unless they cannot be removed without breaking the material or deteriorating the object.
 

 Article 162 of the Mortgage Law of 1979, L.P.R.A. tit. 30, § 2558 (1987 supp.). While it does not govern the case under review, the new statute clearly indicates a change: under the new act, even “permanently placed” items are not deemed mortgaged unless their removal would be destructive. The new law clarifies that permanence under Article 111 means something less than the state at which removal would harm the object.
 

 Relying primarily on the physical quality of their attachment, we conclude the cranes were permanently attached under Article 111. The nature of their attachment to the realty, as outlined in Part III, indicates permanence irrespective of whether Abarca specifically or warehouses generally install such cranes for temporary duty. It may have been Article Ill’s sweeping inclusion of movables used for trade within the scope of mortgages that recently led Judge Fuste to conclude:
 

 The Mortgage Law of 1893 clearly states that when the realty is one dedicated to an industrial operation, and a mortgage encumbers the property, the same will also constitute a lien over the chattels there located. Art. Ill of the Mortgage Law, 1893, 30 L.P.R.A. § 207.
 
 See
 
 Manresa, J.,
 
 Commentaries al Código Civil Español,
 
 Vol. Ill (7th ed. 1952).
 

 In re Porto Rico Iron Works, Inc.,
 
 71 B.R. 90, 92 (D.P.R.1987),
 
 aff'd on other grounds,
 
 835 F.2d 385 (1st Cir.1987). While the express requirement of permanent attachment may militate against including all (even freestanding or minimally attached) trade fixtures within the scope of mortgages under Article 111, the close integration into the warehouse structure of the cranes in this case clearly places them within the statute.
 

 V. CONCLUSION
 

 We hold that the two cranes originally the subject of plaintiff-appellee’s complaint against GDB were fixtures covered by the mortgage deed, and in the alternative, that they were subject to the mortgage by operation of Article 111 of the Mortgage Law of 1893. Because insufficient evidence is presented in the record on appeal regarding the eight cranes which were the subject of GDB’s counterclaim against the trustee, we must remand the counterclaim to the district court for further proceedings. Finally, we do not reach the issue also raised in the counterclaim but not resolved by the bankruptcy court regarding the adequacy of the trustee’s notice of the public sale of
 
 *400
 
 the eight cranes. Nor do we pass on whether any other defenses not ruled on by the bankruptcy court are available to appel-lees seeking to retain the proceeds of that sale.
 

 The judgment as to the trustee’s claim is reversed; the judgment as to the counterclaim is vacated and the matter remanded to the district court for further proceedings consistent with this opinion. Costs to appellant.
 

 [1]
 

 . Appellee apparently agrees that whether the cranes are fixtures turns on the common law definition of that term. He cites in his brief on appeal some 25 state cases on the definition of fixture.
 

 [2]
 

 . Several courts have elaborated. In
 
 Oberjuerge Rubber Co. v. State Tax Commission,
 
 674 S.W.2d 186 (Mo.App.1984), were two overhead cranes were held to be fixtures, the court indicated:
 

 In cases of common ownership, in which the annexor owns both the land and the attached chattel, the elements of a fixture are annexation to the realty, adaptation to the location, and the intent of the annexor at the time of the annexation. The last element is generally regarded as the most important.
 

 Whether the annexor intended at the time of the annexation to make the article a permanent accession to the land is an objective test, to be determined from the annexor’s acts and conduct and the surrounding facts and circumstances.
 

 Id.
 
 at 187-88 (citations omitted).
 
 See also Frost v. Schinkel,
 
 121 Neb. 784, 238 N.W. 659 (1931).
 

 [3]
 

 . We do not here hold that the integrated plant doctrine was the law of Puerto Rico under the 1893 Mortgage Law, though it may have been.
 
 See Banco Territorial y Agricola
 
 v.
 
 Graham,
 
 No. 138 S.Ct.P.R. (Aug. 1, 1901) (English translation certified Aug. 24, 1987) (vat, molasses pump, and two centrifugal machines deemed mortgaged by operation of Article 111 though not physically attached to the realty). Rather, in light of the Puerto Rico Supreme Court’s previous reference to common law on this issue, we consider it at least relevant that in many states the cranes here in issue would be considered mortgaged even if they were not physically attached to the property.
 
 See generally In re Porto Rico Iron Works, Inc.,
 
 835 F.2d 385 (1st Cir. 1987).
 

 [4]
 

 . Neither does it resolve the fixture question discussed in Part III. If removing the cranes would destroy them or the warehouse, then they would be deemed fixtures. But this test does not work in reverse.
 

 The mere fact that [items] can be removed without material damage to [them] by chipping away with a chisel, jack hammer, or compressed air hammer, the cement grouting which attaches [them], does not alone establish their character as articles of personalty. A door or window in an ordinary dwelling house can be removed with very little damage to the realty. It also may be replaced by one of different design or by a new one if the former should become broken or defective, but no one would contend that either was not a part of the realty by reason of these facts alone.
 

 San Diego Trust & Sav. Bank, 16
 
 Cal.2d 142, 151, 105 P.2d 94 (1940).