Filed:   September 7, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-1117
(CA-93-990-AMD)

Washington Metropolitan Area Transit Authority,

Plaintiff - Appellee,

versus

Precision Small Engines, et al.,

Parties in Interest - Appellants.

O R D E R

The court amends its opinion filed June 19, 2000, as follows:

On the cover sheet, section 1 -- the status is changed from "UNPUBLISHED" to "PUBLISHED."

On page 2, section 1 -- the status line is corrected to read "Affirmed by published per curiam opinion."

On page 2, section 3 -- the reference to use of unpublished opinions as precedent is deleted.

On page 4, fifth full paragraph, line 1 -- the paragraph is corrected to begin "Arguing that the mezzanine in question is <u>personal</u> property ...."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,
Plaintiff-Appellee,

v.

PRECISION SMALL ENGINES; GREGORY
HNARAKIS; THOMAS STOKES,
Parties in Interest-Appellants,

and

No. 99-1117

ONE PARCEL OF LAND IN PRINCE
GEORGE'S COUNTY, MARYLAND;
HARRY S. KRAMER; BERNICE J.
KRAMER; UNKNOWN OWNERS;
WASHINGTON SUBURBAN SANITARY
COMMISSION,
Defendants,

TAMARA HNARAKIS; DOMINION BANK
OF MARYLAND,
Parties in Interest.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-93-990-AMD)

Argued: April 6, 2000

Decided: June 19, 2000

Before LUTTIG and WILLIAMS, Circuit Judges, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Danny Freishtat, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., Rockville, Maryland, for Appellants. Kathryn E. Kovacs, Appellate Section, Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Lois J. Schiffer, Assistant Attorney General, David C. Shilton, David Lastra, Appellate Section, Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____


_____

**OPINION**

PER CURIAM:

Precision Small Engines, Inc. ("Precision") appeals the district court's holding, in a one-day bench trial, that a disputed mezzanine constructed by Precision was, for "taking" purposes, a fixture, rightfully compensated to the owners of the property and not the tenant, Precision. The district court held that, at the time of the condemnation by Appellee Washington Metropolitan Area Transit Authority ("WMATA"), the mezzanine was affixed to the property in question and, as a factual matter, was a part of the realty for which the landlord received just compensation. We affirm.

I.

Precision sells and repairs small and medium size engines, lawnmowers, landscape machinery, snow plows, and generators. Gregory

2

Hnarakis, Tammy Hnarakis, and Thomas Stokes are the principals of the company. WMATA is an interstate compact entity created with Congressional consent as an instrumentality of the District of Columbia, the State of Maryland, and the Commonwealth of Virginia. It is empowered by its charter to exercise the power of eminent domain to purchase real or personal property.

Until 1988, Precision leased 4820 and 4822 Lehigh Avenue in College Park, Maryland from Harry and Bernice Kramer. When the company originally moved to this location, Mr. Hnarakis and Mr. Stokes were aware that WMATA might take the property in the future. Accordingly, when they built a wooden mezzanine for additional storage space, they made it removable. In addition, because the walls at this original location were plasterboard with aluminum studs, the mezzanine could not be attached to the property.

Pursuant to its power of eminent domain, WMATA condemned 4820 and 4822 Lehigh Avenue in 1988. Precision, again leasing from landlords Mr. and Mrs. Kramer, moved the mezzanine to a new location at 4824 Lehigh Avenue, customizing it to fit the space. The mezzanine formed a second level of approximately 1,200 square feet in the seventy-five foot deep warehouse and it was eight feet off the ground. Since one of the walls in the new location was cinder block, Precision was able to bolt the mezzanine to the wall using lag bolts. It took several weeks to install the mezzanine and would have taken approximately the same amount to dismantle and remove it. Moreover, extracting the lag bolts could have left more than thirty holes in the wall. Precision never obtained permits to construct the mezzanine, nor did it obtain the landlord's written permission to build it, as required by the lease.

On January 13, 1993, the Kramers accepted WMATA's offer of $1,166,000.00 for Parcel ME091, which included 4824 Lehigh Avenue. Later that month, Precision was notified they would have to move once again. This time, however, WMATA advised Precision that the mezzanine would have to stay, and that WMATA would be purchasing it as part of the Kramers' property. Accordingly, WMATA filed the appropriate papers to take the property, including the mezzanine, but refused to compensate Precision for the mezzanine.

3

Specifically, WMATA filed a Complaint for Condemnation, Declaration of Taking, and Motion for Delivery of Possession in the United States District Court for the District of Maryland on April 5, 1993. No answer was filed by Precision. Instead, on March 9, 1994, almost a year later, Precision filed a "Counter Claim" alleging that the mezzanine was a trade fixture and Precision's personal property.

On May 6, 1998, Precision filed a motion for partial summary judgment, seeking a court order that the mezzanine taken by WMATA was compensable to them. The district court denied this motion without a hearing on September 11, 1998, holding that a dispute of material fact as to whether the mezzanine was personalty or realty precluded summary judgment.

The district judge heard the one-day non-jury bench trial on December 18, 1998, and entered judgment in favor of WMATA on December 21, 1998. Precision filed its notice of appeal on January 15, 1999.

II.

Whether personal property has been so attached to realty as to become a fixture is a question of fact, and a lower court's finding is upheld on appeal by this Court unless it is "clearly erroneous." See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp., 65 F.3d 1113, 1121-22 (4th Cir. 1995). "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

Arguing that the mezzanine in question is personal property and, as such, compensable as part of Appellee's taking, Precision claims that the government must compensate it for the value of the lumber and other hardware which constituted the mezzanine.[1] Accordingly, Precision submits that the district court erred in finding that the mezzanine had the character of real property, despite the fact that the tenant con-

_____

[1] Alternatively, Precision contends that the "replacement value" of the mezzanine would represent adequate compensation.

4

sidered it personally. Precision contends further that WMATA wrong-fully refused to place any value on the mezzanine.

Under Maryland law, a determination of whether an item is a fixture requires the Court's consideration of the following factors: (1) annexation to the realty, either actual or constructive; (2) adaptation to the use of that part of the realty with which it is connected; and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold (intention being inferred from the nature of the article, the situation of the party making the annexation, the mode of annexation, and the purpose for which it was annexed). See Schofer v. Hoffman, 182 Md. 270, 274 (1943).

With this legal backdrop, we conclude that the district court correctly found the mezzanine to be "absolutely affixed" to the property as a "second floor." Precision's sole witness testified that he and his partner bolted the mezzanine to the concrete block wall of the building and adjusted the mezzanine to fit the new location. The evidence further suggests that removing the mezzanine would have required dismantling the entire structure and would have left more than thirty holes in the cinder block wall.

Precision's subjective intent in installing the mezzanine is not relevant to the district court's ultimate determination. Cf. In re Sucesores de Abarca, Inc. v. Gov't Dev. Bank for Puerto Rico, 862 F.2d 394, 396 (1st Cir. 1988). Moreover, Precision's own evidence establishes a basis for the conclusion that it intended to annex the mezzanine to the property and that the district court's finding is not clearly erroneous.

First, the mezzanine could not be removed from the warehouse without being dismantled. Second, Appellants' intent as to whether the structure was a permanent installation must be considered in light of their decision to bolt the mezzanine to the wall -- in contrast to their earlier installation of the same mezzanine at a nearby location where no such bolting was performed. Third, the requirement of dismantling lends major credence to the district court's finding of the mezzanine's permanence. Taken together, these determinations by the district court mitigate against this Court's finding that the district judge was clearly erroneous in classifying the mezzanine as realty.

5

III.

Regarding Precision's estoppel argument, this Court will not consider issues raised for first time on appeal without exceptional circumstances of plain error or a fundamental miscarriage of justice. See Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993).

Here, Precision contends that WMATA was estopped to deny that the mezzanine in question was personal property since WMATA had previously assessed value to it when they paid Precision for the first relocation. In support of this argument, Precision contends that the doctrine of equitable estoppel may be asserted against the government when it is acting in a proprietary manner. This is the situation here, they claim, because the purchase of real estate was the function performed by the government -- and such a function may be considered "proprietary." See, e.g., The Falcon, 19 F.2d 1009, 1014 (D. Md. 1927). Precision also alleges that the "change in position" by WMATA toward the status of the mezzanine is contrary to public policy.

As stated above, however, the general rule is that this Court will not consider issues raised for the first time on appeal. Notably, Precision does not dispute that they failed to raise this issue at the district court level. Because Precision did not evoke the issue of equitable estoppel in the district court, it can not do so here.

Moreover, even if Precision's estoppel argument were properly before this Court for review, it lacks merit because the operation of estoppel against government entities is limited, see Office of Personnel Management v. Richmond, 496 U.S. 414, 419 (1990), and Precision has failed to prove detrimental reliance on the government's alleged misrepresentation. See generally United States v. Agubata, 60 F.3d 1081, 1083 (4th Cir. 1995).

IV.

Finally, the district court did not consider Precision's charge that all of the allegations in its "Counter Claim" were admitted because WMATA failed to file an answer to it. This Court declines to rule on

6

issues that were not addressed by the lower court. See Renn v. Garrison, 100 F.3d 344, 352 (4th Cir. 1996).**2**

Consequently, the district court did not err by hearing all of Appellee's contentions in this matter.

AFFIRMED

_____

**2** Even if Precision had properly preserved their argument on the "Counter Claim," it would not prevail in this Court because the "Counter Claim" was not a permissible pleading. Under Federal Rule of Civil Procedure ("FRCP") 71A(e), aside from contesting the amount of a compensation award, any defense or objection not asserted in an answer is waived. See Fed. R. Civ. P. 71A(e). Simply put, no other pleading besides the answer is contemplated. See id.; see also Atlantic Seaboard Corp. v. Van Sterkenburg, 318 F.2d 455, 458 (4th Cir. 1963) ("One pleading to raise all objections and defenses to the taking and one hearing to dispose of them are contemplated, not successive pleadings and successive hearings spanning a much longer period of time.").

Because Precision failed to file an answer altogether to WMATA's notice of the taking, which was sent pursuant to FRCP 71A(d), it effectively waived the substance of its "Counter Claim." In addition, the filing of a "Counter Claim" almost one year after service of the original Complaint is altogether untimely.